UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS DANIEL CLARK,<br><br>    Plaintiff,<br><br>    v.<br><br>DR. JEFFREY BEARD,<br><br>    Defendant. | Case No. 11-cv-03520-YGR (PR)<br><br>**ORDER GRANTING DEFENDANT BEARD'S MOTION FOR SUMMARY JUDGMENT; AND ADDRESSING OTHER PENDING MOTIONS** |

## INTRODUCTION

Plaintiff Douglas Daniel Clark, an inmate on death row at San Quentin State Prison ("SQSP"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff then filed an amended complaint, in which he alleges only one claim—a First Amendment challenge to a prison regulation limiting his 602 inmate appeals. Dkt. 21-1. Plaintiff claims that when he first arrived at SQSP in 1983, inmates were allowed to file two appeals every seven days and this rule was "rarely enforced." *Id.* at 6. He further claims that in 1987 he filed "a dozen or more appeals in a week, and not one was blocked . . . ." *Id.* at 7. Then in 2011, section 3084.1(f) of Title 15 of the California Code of Regulations as quoted in SQSP's Operational Procedure 608—currently in effect and "created by the signature of [Defendant] Chappell"—"slash[ed] [Plaintiff's] right to appeal any adverse event" because the regulation limits his appeals to "one issue, in one appeal, in any two weeks . . . ." *Id.* at 4. Plaintiff argues that this restriction violates his First Amendment rights to access the courts and "seek redress [from the] government." *Id.* at 3. For example, apparently prior to filing his amended complaint, Plaintiff had intended to file four appeals in one week, but the regulation prevented him from doing so. *Id.* at 21. He seeks injunctive relief and monetary damages. *Id.* at 3, 9.

In his amended complaint, Plaintiff named SQSP Warden Kevin Chappell and former Secretary of the California Department of Corrections and Rehabilitation ("CDCR") Matthew Cate as Defendants. *Id.* at 1. However, the Court later granted Plaintiff's request to substitute the

new Secretary, Dr. Jeffrey Beard, for former Secretary Cate. Dkt. 48. The Court found Plaintiff's claim cognizable and served Defendants Chappell and Beard.[1] Dkts. 40, 48. Specifically, the Court stated as follows:

> The right of meaningful access to the courts extends to established prison grievance procedures. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) [*abrogated on other grounds by Shaw v. Murphy*, 532 U.S. 223 (2001)]; *accord Hines v. Gomez*, 853 F. Supp. 329, 331-32 (N.D. Cal. 1994). This right is subsumed under the First Amendment right to petition the government for redress of grievances, *see id.* at 333, and protects both the filing, *see id.*, and content, *see Bradley*, 64 F.3d at 1279, of prison grievances. Regulations which punish an inmate for using "hostile, sexual, abusive or threatening" language in a written grievance, for example, are not reasonably related to penological[2] interests and therefore violate the First Amendment. *See id.* at 1279-82.
>
> Here, Plaintiff may bring a First Amendment challenge to a prison policy limiting his inmate appeals on the ground that the policy is not reasonably related to legitimate penological interests. *See Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003) (applying *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Liberally construed, Plaintiff's aforementioned allegations state a cognizable First Amendment claim under section 1983. . . .

Dkt. 40 at 3-4 (footnote added).

Thereafter, Plaintiff requested that the Court remove Defendant Chappell as a named Defendant. Dkt. 63. Defendants did not oppose Plaintiff's request (dkt. 65 at note 1), and the Court dismissed all claims against Defendant Chappell. Dkt. 77. Therefore, Defendant Beard (hereinafter "Defendant") is the sole remaining Defendant in this action.

Before the Court is Defendant's motion for summary judgment,[3] in which he argues that the regulation limiting non-emergency appeals does not violate Plaintiff's First Amendment rights. Dkt. 65 at 6. Defendant further argues that even if the regulation does infringe on Plaintiff's First

---

[1] Regardless of commitment circumstances, every person confined or residing in facilities of the department is subject to the rules and regulations of the Secretary, and to the procedures established by the warden, superintendent, or regional parole administrator responsible for the operation of that facility. Cal. Code Regs., tit. 15 § 3001.

[2] Penological means related to the "study of penal institutions, crime prevention, and the punishment and rehabilitation of criminals, including the art of fitting the right treatment to an offender." Black's Law Dictionary (10th ed. 2014).

[3] Prior to the dismissal of all claims against him, Defendant Chappell had joined Defendant Beard in the motion for summary judgment. Because Defendant Chappell is no longer part of this action, the Court considers the arguments in the motion to be made solely by Defendant Beard.

1  Amendment rights, it is nevertheless valid because it is reasonably related to legitimate
2  penological interests. *Id.* Defendant also argues that Plaintiff does not have standing to challenge
3  the prison regulation at issue, and that Defendant is entitled to qualified immunity. *Id.*
4        Plaintiff filed an opposition to the motion and disputes the facts and representations offered
5  by Defendant. Dkts. 68-69. Plaintiff has also filed a declaration in support of his opposition. Dkt.
6  70. Defendant filed a reply to the opposition. Dkt. 71. Plaintiff then filed a sur-reply[4] without
7  first seeking approval from the Court as required by Local Rule 7.3(d). Dkt. 73. Defendant
8  moves to strike this sur-reply, and Plaintiff has since requested the Court's permission to file the
9  sur-reply. Dkts. 75, 76. The Court DENIES Defendant's motion to strike Plaintiff's sur-reply
10 (dkt. 75), GRANTS Plaintiff leave to file a sur-reply (dkt. 76), and considers it part of the record.
11       For the reasons outlined below, the Court GRANTS Defendant's motion for summary
12 judgment. Dkt. 65.

## DISCUSSION

### I.   BACKGROUND

#### A.   Prison Appeals Process

CDCR inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs., tit. 15 § 3084.1(a). However, they are limited to filing "one appeal every 14 calendar days unless the appeal is accepted as an emergency appeal." *Id.* § 3084.1(f). There is no limit to the number of emergency appeals an inmate may file. Dkt. 65 at 9.

SQSP personnel "screen all appeals prior to acceptance and assignment for review." Cal. Code Regs., tit. 15 § 3084.5(b); *see also* Davis Decl., Dkt. 65-1 at 2. If the appeal states a comprehensible issue, staff then accept the appeal and enter it into the Inmate Appeals Tracking System ("IATS"). Davis Decl., Dkt. 65-1 at 2. If the inmate has submitted an appeal within the last fourteen days, IATS "does not allow the new appeal to be accepted." *Id.* But if staff members

---

[4] Although Plaintiff's filing is entitled "Plaintiff's Reply to the Defendants' Reply to Reply [to] Motion to Dismiss Proceedings," the Court construes it as his sur-reply. Dkt. 73.

1  designate the appeal as an emergency, they will override IATS and accept the appeal. *Id.* If staff
2  reject or "screen out" the appeal, the inmate may correct and re-submit the appeal within thirty
3  days. Cal. Code Regs., tit. 15 § 3084.6(a)(2). SQSP allows inmates to re-submit screened-out
4  appeals up to four times. Davis Decl., Dkt. 65-1 at 2.

Although Title 15 provides that "no reprisal shall be taken against an inmate or parolee for filing an appeal," it still deems submitting "more than one appeal in a 14 calendar day period" "misuse or abuse" that "may lead to appeal restriction." Cal. Code Regs., tit. 15 §§ 3084.1(d), 3084.4(a). In fact, upon confirmation of continued abuse, prison authorities may restrict an inmate "to one non-emergency appeal every 30 calendar days for a period of one year." *Id.* § 3084.4(g). Additionally, Title 15 "does not prohibit the pursuit of disciplinary sanctions for violation of department rules." *Id.* § 3084.1(d).

### B. Plaintiff's Appeals

SQSP Appeals Coordinator M.L. Davis submitted two separate declarations in support of Defendant's motion for summary judgment and reply, respectively. Dkts. 65-1, 72.[5] According to Davis, Plaintiff has submitted 556 appeals since 1996.[6] Davis Decl., Dkt. 65-1 at 4; Davis Decl. 2, Dkt. 72 at 1. Plaintiff disputes this number and alleges that "well over 100 of the listings are not filed appeals." Dkt. 69 at 19. Davis responds that the disputed appeals "were screened out before being accepted at the first level," but "were still submitted to the appeals office." Davis Decl. 2, Dkt. 72 at 2. Despite any disagreement over the exact number of appeals Plaintiff filed, both parties agree that the prison regulation at issue limits the number of appeals he may file. Dkts. 21-1 at 3-4, 65 at 8. Furthermore, both parties agree that SQSP officials have rejected appeals from Plaintiff based on the regulation's non-emergency appeal limitation. Dkt. 21-1 at 23; Davis Decl., Dkt. 65-1 at 4; Dkt. 69 at 9. Thus, while the Court notes Plaintiff's objections to Davis's declarations, it recognizes that determining the actual number of Plaintiff's appeals is unnecessary to resolve the instant summary judgment motion. The pertinent issue at hand is whether the

---

[5] For citation purposes, the Court will refer to the second declaration as "Davis Decl. 2."
[6] Although Plaintiff has resided in SQSP since 1983, the appeals tracking system does not provide data on Plaintiff's appeals before 1996. Davis Decl. 2, Dkt. 72 at 1.

4

challenged regulation's limitation on appeals violates Plaintiff's First Amendment rights.

## II. LEGAL STANDARD

Summary judgment is proper where the record shows there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* On an issue where the opposing party will have the burden of proof at trial, however, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *Id* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Self-serving affidavits may establish a genuine issue of material fact as long as "they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001). Still, the Court may grant summary judgment when the nonmoving party's evidence is merely colorable, or is not significantly probative. *Liberty Lobby*, 477 U.S. at 249-50.

When there is a genuine dispute to the facts, the Court must view those facts "in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). But, "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec.*, 475 U.S. at 587. Finally, if the nonmoving party fails to show a genuine issue of material fact, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

### III.  FIRST AMENDMENT CLAIM

As mentioned above, Plaintiff claims that the challenged regulation limiting him to only one non-emergency appeal every fourteen days violates his First Amendment rights.  Specifically, Plaintiff claims the regulation "attack[s] and chill[s]" his rights to access the courts and seek redress from the government.  Dkt. 21-1 at 3.  To remedy this alleged violation, Plaintiff requests the Court to ban Defendant from imposing "limits on the number of non-frivolous grievance/appeals."  *Id.*  He wants "all non-frivolous appeals to be filed, without a limit of appeals per week, or per month."  *Id.* at 9.

While an inmate's right to meaningful access to the courts extends to *established* prison grievance procedures, *Bradley*, 64 F.3d at 1279, inmates have no constitutional right to a *specific* grievance procedure, *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.")).  Although inmates do not have a constitutional right to a particular grievance procedure, courts have held that inmates may not be retaliated against for using an available grievance procedure or for the content of their appeals.  *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003); *Bradley* 64 F.3d at 1276.  For example, in *Bradley v. Hall*, the Ninth Circuit invalidated an Oregon Department of Corrections' prison regulation, and held that "prison officials may not punish an inmate merely for using hostile, sexual, abusive or threatening language in a written grievance."  64 F.3d at 1281-82.

Here, unlike the plaintiff in *Bradley*, Plaintiff did not allege in his amended complaint that he was retaliated against because of the content of any of the appeals he filed.  As explained above, the Court's Order for Service recognized only Plaintiff's First Amendment claim

6

challenging the prison regulation (dkt. 40 at 4), and it did not address any claim for retaliation.[7] In his complaint, Plaintiff specifically argued that the challenged regulation infringes on his First Amendment rights because it prevents him from filing an unlimited number of non-emergency appeals. However, Plaintiff has no First Amendment right to file appeals in the first place. *See Mann*, 855 F.2d at 640. In addition, Plaintiff fails to show that he holds a constitutional right to file an unlimited number of non-emergency appeals. *See Ramirez*, 334 F.3d at 860. Since Plaintiff cannot show that the challenged regulation infringes on his First Amendment rights, the Court finds that Plaintiff's First Amendment claim must fail.

Assuming arguendo that the challenged regulation did infringe on Plaintiff's First Amendment rights, the regulation would be still be lawful because it relates to a legitimate penological interest. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89 (finding prison regulation limiting inmate to inmate correspondence valid as related to security interests, but regulation controlling an inmate's right to marry invalid as not reasonably related to either security or rehabilitative interests). The Supreme Court has established a four-factor test to determine the validity of such a prison regulation: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact [an] accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally;" and (4) the "absence of ready alternatives." *Turner*, 482 U.S. at 89-90. A plaintiff challenging the law or

---

[7] In his opposition, Plaintiff seems to allege the challenged regulation's limit on non-emergency appeals, in and of itself, constitutes retaliation. *See generally* Dkt. 69. Plaintiff also alludes to retaliation by referencing his former placement on appeal restriction, which limited him to filing one appeal every thirty days. *Id.* at 6-7. Plaintiff further contends that prison officials threatened him, placed him in "the hole," and physically assaulted him because he filed appeals. *Id.* at 13. Finally, Plaintiff accuses SQSP Correctional Counselor V. Sanford of retaliation based on Plaintiff filing his opposition to the summary judgment motion in the instant action. Dkt. 73 at 2-3, 17-25. The Court will not consider the aforementioned claims of retaliation at this time because Plaintiff cannot raise new claims that were not previously raised in his amended complaint. If Plaintiff wishes to pursue these retaliation claims, he may file a new complaint alleging such claims in a separate civil rights action after first exhausting his administrative remedies.

regulation bears the burden of proving the prison regulation is invalid. *Overton*, 539 U.S. at 132. Also, federal courts must accord substantial deference to prison administrators because they "bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.*

The First *Turner* Factor: Defendant argues "there is a valid, rational connection between the prison regulation limiting the number of non-emergency appeals an inmate may file and CDCR's legitimate governmental interest justifying the regulation." Dkt. 65 at 13. According to Title 15, CDCR's appeal procedure "is intended to provide a remedy for inmates and parolees with identified grievances and to provide an administrative mechanism for review of departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates and parolees." Cal Code Regs., tit. 15 § 3084.1. Defendant notes, however, that administering the appeals system requires significant correctional resources. Dkt. 65 at 13-14. Defendant asserts that limiting the number of non-emergency appeals ensures that all inmates have access to the appeal procedures.[8] *Id.* at 14. Defendant also argues that the limitation conserves prison resources, which in turn protects institutional safety and security. *Id.* Defendant suggests that if every inmate at SQSP were to file as many appeals as Plaintiff wishes, the appeals office would be unable to provide proper review or investigate legitimate inmate concerns.[9] *Id.* at 14-15.

The Court recognizes that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 84-85. "Prison administration . . . has been committed to the responsibility of those branches, and

---

[8] The Court rejects Defendant's comparison of the limit on inmate appeals to "the federal court's ability to manage its docket by entering pre-filing orders against vexatious litigants." Dkt. 65 at 14. Section 3084.1(f) prevents an inmate from filing more than one non-emergency appeal within a fourteen day period regardless of his or her past use of the procedure. Federal courts, on the other hand, may impose pre-filing restrictions only where the litigant has demonstrated prior abuse of the court system. *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990).

[9] The Court finds unavailing Plaintiff's argument that the appeals office is capable of handling more appeals because SQSP allowed inmates to file more appeals in the past. Dkt. 73 at 8, 10. Plaintiff provides no evidence to counter Defendant's argument that the appeals office would be unable to handle more appeals without devoting more resources to the screening and investigation process.

8

separation of powers concerns counsel a policy of judicial restraint." *Id.* at 85. "Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." *Id.* (citing *Procunier v. Martinez,* 416 U.S. 396, 405 (1974) *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989)). Despite this deferential standard, where appropriate, the court must also look to see if the action of prison officials is an "'exaggerated response to prison concerns.'" *Bradley*, 64 F.3d at 1281 (quoting *Turner*, 482 U.S. at 89-90).

The Court finds that Defendant has carried his burden of establishing a rational connection between the challenged regulation's limitation on filing non-emergency appeals and the welfare of inmates. Limiting non-emergency appeals permits each inmate to access the appeal system by ensuring that one inmate does not preempt the system with an inordinate amount of appeals. Additionally, the limitation conserves prison resources; if the prison was forced to dedicate more attention to appeals management, such a diversion of resources may weaken institutional safety and security. Considering the deference courts owe state prison authorities, *see Overton*, 539 U.S. at 132, the Court finds these rationales sufficiently valid to form a rational connection between the regulation and the asserted government interest.

Even while viewing the facts in the light most favorable to Plaintiff, the Court finds that he has failed to present specific evidence showing there is a genuine issue regarding the connection between the challenged regulation's limitation and the welfare of inmates. Plaintiff argues that Defendant has limited his appeals, but does not address Defendant's contention of a valid and rational connection between the regulation and the welfare of inmates. Instead, he argues there is no penological interest because past policies show that SQSP is capable of allowing more appeals. Dkt. 73 at 8-11. This alone does not show that Defendant is exhibiting an "exaggerated response" to a prison concern. Under the deference afforded to state prison authorities, *see Overton*, 539 U.S. at 132, the Court finds Plaintiff's argument unavailing and accepts Defendant's penological interest rationales. Accordingly, the Court finds that a rational trier of fact could find only for Defendant here, and thus there is no material issue of fact regarding the first *Turner* factor.

The Second *Turner* Factor: This factor asks "whether there are alternative means of

exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. The Supreme Court has noted that "[w]here 'other avenues' remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials' . . . in gauging the validity of the regulation." *Id.* (citing *Jones v. North Carolina Prisoners' Union,* 433 U.S. 128, 131 (1977); *Pell v. Procunier,* 417 U.S. 817, 827 (1974)). The Court notes that while Defendant limits Plaintiff's ability to file appeals, he does not outright ban it. First, Plaintiff can file any emergency appeal without restriction. Second, Plaintiff can file non-emergency appeals, as long as he complies with the time period requirements. Third, even if Plaintiff does not comply with those requirements, SQSP affords him the opportunity to correct his "screened out" non-emergency appeals. Dkt. 65 at 15.

Plaintiff does not dispute that he may file multiple emergency appeals, but he argues that such "emergencies" are defined much more narrowly than Defendant suggests. Dkt. 68 at 7. Specifically, Plaintiff objects to Defendant's general description that an "emergency appeal is one that indicates a risk of harm." *Id.* Plaintiff claims that in practice, emergency appeals are used only for "serious risk of safety, security, life and limb, injury," and not the more general definition of any harm to the inmate. *Id.* Plaintiff argues that most of his appeals would qualify as emergencies under the "any harm" standard and he would not need to bring this lawsuit if that were the case. *Id.* He also argues that prison regulations require him to file an appeal within thirty days of when the underlying event occurs. Dkt. 69 at 8. Combined with the one non-emergency appeal per fourteen-day restriction, Plaintiff argues that the opportunity to correct his rejected appeals is quite restricted and not nearly as forgiving as Defendant implies. *Id* at 8-9.

While Plaintiff attacks the sufficiency of the alternative means, he does not suggest that he is without an alternative. It is thus beyond dispute that the CDCR and SQSP provide alternatives for Plaintiff to exercise his First Amendment right besides filing multiple non-emergency appeals within fourteen days. Therefore, this Court finds that Plaintiff has not alleged a material dispute of fact regarding the existence of alternative means and must rule for Defendant on the second *Turner* factor.

The Third *Turner* Factor: This factor considers the "the impact [an] accommodation of the

10

asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Again, the Supreme Court warns that where accommodation "will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.* (citing *Jones*, 433 U.S at 132-133). Defendant reiterates that allowing inmates to file unlimited appeals will allow one inmate to preempt the prison staff's time and resources. Dkt. 65 at 15. Defendant also points out that staff use substantial prison resources to investigate claims and that the allocation of resources would "be greatly affected" if inmates are allowed to file unlimited non-emergency appeals. *Id.*

Plaintiff alleges that SQSP is "designed to handle over 90,000 appeals a year." Dkt. 69 at 11. But Plaintiff's estimate is based on the possibility that every inmate files the maximum number of appeals. Plaintiff does not ground his assertion in any specific evidence or discuss how the prison could handle an increased number of appeals without sacrificing resources from other correctional needs. Plaintiff has thus failed to create a material dispute of fact regarding how unlimited non-emergency appeals would affect the allocation of prison resources. The Court finds in favor of Defendant on the third *Turner* factor.

The Fourth *Turner* Factor: Finally, this factor considers the, "absence of ready alternatives." *Turner*, 482 U.S. at 90. The Supreme Court views an absence of a ready alternative as "evidence of the reasonableness of a prison regulation." *Id.* (citing *Block v. Rutherford,* 468 U.S. 576, 587 (1984)). While this factor is not a least restrictive alternative test, the "existence of obvious, easy alternatives" may show that the regulation is not reasonable, but an "exaggerated response" to prison concerns. *Id.* "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

Defendant maintains that there is no ready alternative to the limitation on non-emergency appeals. Dkt. 65 at 16. Specifically, Defendant argues the regulation is "narrowly tailored" to address the concern over the burden that allowing unlimited appeals would impose on prison staff.

11

*Id.* Defendant also cites the fact that inmates may file unlimited emergency appeals to show that the regulation does not endanger inmate safety. *Id.*

Meanwhile, Plaintiff again argues that in the past, prison officials allowed him to file more than one appeal every fourteen days. Dkts. 21-1 at 6-7; 73 at 6, 8. However, Plaintiff does not propose a less restrictive limitation as a potential remedy. Rather, he seeks the ability to file "without a limit of appeals per week, or per month." *Id.* at 9. Moreover, Plaintiff does not provide any evidence as to why the fourteen-day rule is an "exaggerated response" to prison concerns. Put simply, Plaintiff does *not* demonstrate that a ready alternative exists. *Id.* at 4.

While SQSP might be able to implement a less restrictive limitation, Plaintiff has not put forth a material dispute as to the availability of a ready alternative. Even if the Court were to construe the references to his prior appeal allowances as offering a ready alternative, Plaintiff has not shown that such a change would involve *de minimis* costs to valid penological interests. Thus, the Court has no basis to find that the challenged regulation's limitation is unreasonable. Accordingly, the Court rules once again for the Defendant because the fourteen-day restriction on non-emergency appeals satisfies the fourth and final *Turner* factor.

Based on its consideration of the *Turner* factors, the Court finds that even if the challenged regulation infringes on Plaintiff's First Amendment rights, it is nevertheless valid as it relates to a legitimate penological interest. In sum, because Plaintiff has failed to provide sufficient evidence of a First Amendment violation for a reasonable jury to return a verdict in his favor, Defendant's motion for summary judgment is GRANTED.[10]

**CONCLUSION**

For the reasons outlined above, the Court orders as follows:

1. Defendant's motion to strike Plaintiff's sur-reply is DENIED. Dkt. 75.

2. Plaintiff's motion for leave to file a sur-reply is GRANTED. Dkt. 76.

3. Defendant's motion for summary judgment is GRANTED. Dkt. 65.

---

[10] The Court's finding that Defendant is entitled to summary judgment as a matter of law on Plaintiff's First Amendment claim obviates the need to address Defendant's alternative arguments regarding standing and an entitlement to qualified immunity.

12

4. The Clerk of the Court shall enter judgment, terminate pending motions, and close the file.

5. This Order terminates Docket Nos. 65, 75, and 76.

IT IS SO ORDERED.

Dated: July 20, 2015

YVONNE GONZALEZ ROGERS
United States District Judge